French *v.* Smith.

CHAUNCEY S. FRENCH

*v.*

RICHARD C. SMITH et al.

A right of way which was originally a way of necessity had existed un-disturbed since 1840.—*Held*, that certain proceedings in 1845 by chosen freeholders to open the way as a by-road might, under the circumstances, be resorted to in order to locate and define the way.—*Held*, further, that the owner of the servient tenement and his tenants should be perpetually en-joined from obstructing the way and should also pay costs, but that neither the owner's children, who have no title in the premises, but have nevertheless been made parties, nor his mortgagees, who have also been made parties, should be required to pay costs.

Bill for relief.   On final hearing on pleadings and proofs and stipulations of counsel.

*Mr. J. H. Meeker, Jr.*, for complainant.

*Mr. J. H. Stone*, for answering defendants.

THE CHANCELLOR.

This suit is brought for an injunction to prevent the defend-ants Smith and Redden from depriving the complainant of the benefit of an easement, a private right of way, over land in East Orange owned by Michael Mohor.   Mohor leased the land over which the way is to the defendants Smith and Redden, and they were erecting a building thereon when the bill was filed to en-join them from so doing.   Mohor's land is upon Main street, in East Orange, and the complainant's is immediately in the rear of

it, separated from it by the Morris and Essex railroad. The complainant, if deprived of the easement in question, has no way by or through which to reach his land with vehicles &c., from any highway. The easement which he claims, was originally a way of necessity. On the 24th of October, 1840, Amos W. Condit owned both properties, the land of the complainant and the Mohor property. He then conveyed the former to Barnabas Day, from whom, by various mesne conveyances, the complainant derives his title. Condit continued to own the Mohor property until November 19th, 1841, when he conveyed it to Elisha Knight, from whom, by several mesne conveyances, the Mohor title is derived. Michael Mohor bought his land in 1873. He afterwards conveyed it to Frederick Mohor, who conveyed it to Michael Mohor's wife. She subsequently died, and by her will devised the property to her husband in fee.

At the time of the conveyance by Condit to Day there was no means of access to any highway from the property conveyed to him except to Main street (then called Broad street), over the land then owed by Condit and subsequently conveyed by him to Knight. Day, therefore, had a way of necessity over the latter property, and he appears to have enjoyed it without interruption for several years, up to about 1845, when one Hollum, who then owned the Mohor land, shut up the way. Day then applied to three of the chosen freeholders of the county, under what is now the thirty-sixth section of the road act in the Revision, and the three freeholders appear to have laid out the road on the 28th of March, 1845, for (as stated in their certificate) the benefit of Day, his " heirs, executors and assigns," fifteen feet wide, over the Mohor land and at the easterly side thereof—the easterly boundary of the road being the easterly line of the land. It is urged by the counsel of the answering defendants (the Mohors and Smith and Redden) that that proceeding was without warrant of law; that the way was not a by-road within the meaning of the statute above referred to &c. But the complainant's title to the easement in nowise depends upon that proceeding. The right of way did not originate from it, but from necessity. It may be remarked, however, that the way appears to have been in fact used by others

besides Day, to get to their land in the vicinity south of the railroad. Reference to that proceeding under the road act is useful as showing the location of the way. The freeholders were called upon to deal with the way as an existing by-road, and they declared its width and defined its boundaries. As they so defined and described it, Day and those who claimed under him used it for about forty years, with but little interruption, until Smith and Redden undertook to shut it up by building upon it. The existence of the way is not denied, and it is not denied that it was a way of necessity, and has been enjoyed by Day and those who have claimed under him, for about forty-five years. But the answering defendants contend that it was not located upon the Mohor property at all, but on the west side of other land adjoining it on the east. It appears clearly that it was originally located upon the Mohor land; that the three freeholders found that it was there and by their certificate located it there, and that it was enjoyed by Day and those claiming under him as being located there, and there is no evidence of any change in its location at any time. Nor is there any evidence of surrender or abandonment of the right, but, on the contrary, the proof shows prompt, sturdy and effectual resistance to every attempt to deprive the owners of the complainant's land of it. It may be added that when Mohor bought the property he had notice from his grantor of the existence of the right. The injunction should be made perpetual, with costs as against him and Smith and Redden. Mohor, when the acts complained of were done, was in possession of the land by Smith and Redden, his tenants. His children have done nothing in the matter, and they have no title. They should not be required to pay costs. Neither should the other defendants, mortgagees of the Mohor property.